ROSE, Appellant, v. NORTHERN PACIFIC RY. CO. et al., Respondents.

(No. 2,350.)

(Submitted January 15, 1907.  Decided February 2, 1907.)

(88 Pac. 767.)

*Common Carriers—Railroads—Passengers—Loss of Baggage— Liability—Contracts—Public Policy.*

Appeal—Order Vacating Default—How Reviewable—Record.

1.  Where the moving papers on which an application to vacate a default had been made are not embraced in a bill of exceptions, the supreme court cannot review the ruling made thereon, since, not having any authoritative information before it as to what evidence the trial court acted upon, it is unable to say that the discretion lodged in the district court was abused.

Carriers—Passengers—Baggage—Liability for Loss—Contracts.

2.  *Held,* that a railroad ticket, signed by the passenger, which contained, among others, the recital that in consideration of the reduced rate at which it was sold, the passenger agreed that the value of her baggage did not exceed $100, was a sufficient consideration for any contract which the carrier might lawfully make respecting the transportation of both passenger and baggage, and that it was not necessary that there should have been an independent consideration for each and every paragraph or provision of the contract of transportation, in order to make it valid and binding.

Same—Loss of Baggage—Limitation of Liability—Evidence.

3.  In an action by a railway passenger to recover for the loss of baggage, where it appeared that the agent of the carrier had been instructed by his company to furnish plaintiff a certain kind of ticket without price, which, among others, contained stipulations limiting the liability of the carrier for loss of baggage to $100, in consideration of the reduced rate of the ticket, and that the agent could not vary the

terms of the contract in any manner, and which had been signed by the passenger, she was bound by the terms of the agreement; and evidence that nothing had been said to her by the agent about a reduced rate or a limitation upon the value of her baggage. was properly excluded.

Same—Loss of Baggage—Liability—Special Contract—Validity.
4.   In the absence of fraud, a railway passenger signing a ticket containing a provision limiting the carrier's liability for loss of baggage to a specified sum cannot be heard to say that she did not know of or understand the contents of such ticket, which constituted a contract between the parties.

Same—Loss of Baggage—Special Contract Limiting Liability.
5.   Where a railway ticket had been furnished a passenger without price, and signed by her, containing a stipulation that, in consideration of the reduced price at which it was sold, in case of loss of her baggage, recovery should be limited to $100, she cannot urge, in an action to recover for the loss of such baggage, that the carrier should have accorded her an opportunity to determine for herself whether she would accept the limited ticket or procure another containing no limitation.

Same—Loss of Baggage—Special Contract Limiting Liability—Public Policy.
6.   *Held,* that a contract made by a railway company with a passenger in the sale of a ticket, which among other recitals contained the provision that, in view of the reduced rate at which it was furnished, the carrier's liability for loss of baggage should be limited to $100, was not void as against public policy.

*Appeal from District Court, Silver Bow County; John B. McClernan, Judge.*

Action by Mrs. Edward Rose against the Northern Pacific Railway Company and another.   From a judgment for defendants, and from an order denying her a new trial, plaintiff appeals.   Affirmed.

*Messrs. Mackel & Meyer,* for Appellant.

(Citing *Bowring* v. *Wabash Ry. Co.,* 77 Mo. App. 250; *Hart* v. *Pennsylvania Ry. Co.,* 112 U. S. 331, 5 Sup. Ct. 151, 28 L. Ed. 717; *Michalitschke* v. *Wells, Fargo Co.,* 118 Cal. 683, 50 Pac. 847; *McFarlane* v. *Adams Express Co.,* 137 Fed. 982; *United States* v. *Trans-Missouri Ft. Assn.,* 166 U. S. 290, 17 Sup. Ct. 540, 41 L. Ed. 1007; *Kreamer* v. *Earl,* 91 Cal. 112, 27 Pac. 735; *Alpers* v. *Hunt,* 86 Cal. 78, 21 Am. St. Rep. 17, 24 Pac. 847, 9 L. R. A. 483; *Chicago etc. Co.* v. *Solan,* 169 U. S. 133, 18 Sup. Ct. 289, 42 L. Ed. 688; *Davis* v. *Chicago etc. Ry. Co.,* 83 Iowa,

744, 49 N. W. 77; *Central etc. Ry. Co.* v. *Murphey*, 113 Ga. 514, 38 S. E. 970, 53 L. R. A. 720; *Louisville Ry. Co.* v. *Nicholia*, 4 Ind. App. 119, 51 Am. St. Rep. 206, 30 N. E. 424; *Cleveland etc. Ry. Co.* v. *Tyler*, 9 Ind. App. 689, 35 N. E. 523; *Wald* v. *Pittsburg etc. Co.*, 162 Ill. 545, 53 Am. St. Rep. 332, 44 N. E. 888, 35 L. R. A. 356; *Paul* v. *Pennsylvania Ry. Co.*, 70 N. J. L. 442, 57 Atl. 139.)

*Messrs. Wallace & Donnelly*, for Respondent, Northern Pacific Railway Company.

(Citing *Cau* v. *Texas & Pacific Ry. Co.*, 194 U. S. 427, 24 Sup. Ct. 663, 48 L. Ed. 1053; *Fonseca* v. *Cunard Steamship Co.*, 153 Mass. 553, 25 Am. St. Rep. 660, 27 N. E. 665, 12 L. R. A. 341; *New Jersey Nav. Co.* v. *Merchants' Bank*, 6 How. 344, 12 L. Ed. 465; 10 Rose's Notes, U. S. Supreme Court Reports, p. 896.)

*Mr. Edwin M. Lamb*, for Respondent Chicago, Burlington and Quincy Railway Company.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

Mrs. Edward Rose commenced this action in the district court of Silver Bow county against the Northern Pacific Railway Company and the Chicago, Burlington and Quincy Railway Company to recover the sum of $1,775, the alleged value of certain baggage lost by the defendants, and for $220 damages for mental anguish occasioned by such loss.

The complaint alleges that on January 11, 1905, the defendants received the plaintiff as a passenger on their trains, to be conveyed from Butte to Omaha, and also received for transportation her baggage consisting of a trunk containing her wearing apparel, of the value of $1,775; that the trunk and its contents were lost by reason of the negligence of the defendants, to plaintiff's damage in the sum of $1,775. It is also alleged

that by reason of this loss the plaintiff suffered mental anguish, by reason of which she was further damaged in the sum of $220.

To this complaint the defendant Northern Pacific Railway Company interposed. a general demurrer, which was afterward withdrawn and fifteen days allowed for answer. At the expiration of this period the default of this defendant was entered for failure to answer. Thereafter application was made to set aside the default and permit an answer to be filed. This application was granted. The answer of the defendant Northern Pacific Railway Company admits the loss of the plaintiff's baggage, but denies that its value was any sum greater than $100; and alleges that the plaintiff traveled on, and her baggage was accepted for carriage and carried under and by virtue of, a special contract, one of the stipulations of which was that the plaintiff's baggage did not exceed in value $100, and that the consideration of this contract was a reduced rate of transportation. This defendant admitted its liability in the sum of $100.

The defendant Chicago, Burlington and Quincy Railway Company filed its answer, putting in issue all the allegations of the complaint, except that each of the defendants is a corporation organized and doing business in this state. The affirmative allegations of the answer of the Northern Pacific Railway Company were put in issue by reply. The cause was tried to the court sitting with a jury. After hearing the testimony the court directed a verdict in favor of the plaintiff and against the defendant Northern Pacific Railway Company for $100, which was returned. From a judgment entered on this verdict and from an order denying her a new trial, the plaintiff appeals. Heretofore the appeals were dismissed as against the Chicago, Burlington and Quincy Railway Company.

During the course of the trial counsel for plaintiff sought to show that nothing whatever was said to Mrs. Rose about a reduced rate of transportation, or that the value of her baggage was not to exceed $100. Upon objection this offered testimony was excluded. The assignments of error made in this court re-

late to the action of the district court: (1) In setting aside the default of the defendant Northern Pacific Railway Company; (2) in excluding the testimony above; and (3) in directing a verdict.

1. We cannot consider the first assignment on its merits. The moving papers upon which the application to vacate the default was made are not embraced in a bill of exceptions, and therefore are not identified. This court has no authoritative information as to what evidence was before the trial court, and therefore cannot say that it abused its discretion in this regard. (*Rumney Land etc. Co.* v. *Detroit etc. Cattle Co.*, 19 Mont. 557, 49 Pac. 395; *Emerson* v. *McNair*, 28 Mont. 578, 73 Pac. 121.)

2. The other assignments present the same question, and they are considered by counsel together. It is urged by appellant, first, that there was not any consideration for the contract which assumed to limit the carrier's liability for the loss of plaintiff's baggage to $100; and second, that, even if there was a sufficient consideration, the contract to that extent is void as against public policy.

First. The facts disclosed by the evidence are that on January 9, 1905, H. F. Ruger, freight and passenger agent for the Chicago, Burlington and Quincy Railway Company, at Butte, received from that company at Omaha a telegram in cipher which translated reads: "Furnish Mrs. Ed. Rose, 21 North Main, one first-class limited ticket Butte to Omaha, you to report ticket furnished on this telegram. Leave to-night if possible." The Burlington agent purchased a ticket of the description mentioned in the telegram, from the Northern Pacific Railway Company at Butte, and delivered it to Mrs. Rose after she had signed the same. The ticket contained, among others, these provisions: "In consideration of the reduced rate at which this ticket is sold, I, the undersigned, agree to and with the several companies over whose lines this ticket entitles me to be carried as follows, to wit:  * * *  (8) That the value of my baggage does not exceed $100;  * * *  (11) That no agent or employee of any lines named in this ticket over whose road I am entitled by the

terms of this ticket to travel, has any power to alter, modify or waive in any manner any of the conditions named in this contract.'' Immediately under the eleventh provision, which is the last one, is the signature of Mrs. Rose.

This ticket constituted a contract between the Northern Pacific Railway Company and Mrs. Rose for the transportation of herself and her baggage from Butte to Omaha. (6 Cyc. 570.) It must be conceded that the reduced price at which the ticket was sold is a sufficient consideration for any contract which the company might lawfully make respecting the transportation of the passenger or her baggage. It is not necessary that there should have been a special or independent consideration for every separate paragraph or provision of the contract, for the consideration of the contract itself is a consideration for every provision in it. In other words, the ticket containing these eleven provisions, with the introductory clause quoted above, constitutes one entire contract.

In *Cau* v. *Texas etc. Ry. Co.*, 194 U. S. 427, 24 Sup. Ct. 663, 48 L. Ed. 1053, it is said: ''It is again urged that there was no independent consideration for the exemption expressed in the bill of lading. This point was made in *York Co.* v. *Central R. R.*, 3 Wall. 107, 18 L. Ed. 170. In response it was said: 'The second position is answered by the fact that there is no evidence that a consideration was not given for the stipulation. The company, probably, had rates of charges proportioned to the risks they assumed from the nature of the goods carried, and the exception of losses by fire must necessarily have affected the compensation demanded. Be this as it may, the consideration expressed was sufficient to support the entire contract made.' In other words, the consideration expressed in the bill of lading was sufficient to support its stipulations.''

But it is said that the recital that the ticket was sold at a reduced rate was only *prima facie* evidence of the fact, and therefore the court should not have excluded the testimony offered. It is sufficient answer to say that no effort was made to show that in fact the ticket was not sold at a reduced rate. The

only effect of the testimony sought to be introduced was that nothing was said to Mrs. Rose about a reduced rate or a limitation upon the value of her baggage. We think the court's ruling was clearly correct. In the first place, Mrs. Rose was not purchasing this ticket. It was furnished by the Burlington road or by some one in Omaha for her. What difference could it have made that no statements were made by the Burlington agent in Butte? As said above, it was not sought to show that any representations were in fact made, but only that no representations were made as to the rate at which the ticket had been furnished, or that the value of plaintiff's baggage was not to exceed $100. If the evidence had been introduced, the situation of the parties would not have been different in any respect from what it is now.

The Burlington agent at Butte had specific directions to furnish Mrs. Rose a particular kind or character of ticket. He performed his duty fully when he furnished precisely the kind of ticket he was directed to furnish. There was not any legal obligation resting on Mrs. Rose to accept the particular ticket tendered to her. Doubtless, she could have purchased a different kind of ticket and one which would not have limited the amount of recovery for her baggage in case of loss, but she chose to accept this ticket and agreed that the value of her baggage did not exceed $100. Furthermore, she agreed, under the eleventh paragraph of the contract, that the agent at Butte could not alter, modify, or waive in any manner any of the conditions named in the contract. If, then, the agent could not vary the terms of the contract by any act or omission on his part, it is impossible to perceive the relevancy of the testimony offered.

But it is contended that Mrs. Rose was not aware of the terms of paragraph 8 of the ticket, as set forth above, and that in any event she should have been accorded the opportunity to determine for herself whether she would accept this ticket with its limitation as to the value of her baggage or procure another kind of ticket by which she might have held the carrier for its full value. We do not think there is any merit in either of

these contentions.    The limitation mentioned in paragraph 8 was made by a plain provision on the face of the ticket, and the ticket was signed by Mrs. Rose.    In the absence of fraud, a party to a written contract cannot be heard to say that he did not know or understand its contents.    In *Cau* v. *Texas etc. Ry. Co.*, above, it is said: "There can be no limitation of liability without the assent of the shipper *(New Jersey Steam Nav. Co.* v. *Merchants' Bank,* 6 How. 344, 12 L. Ed. 465), and there can be no stipulation for any exemption by a carrier which is not just and reasonable in the eye of the law *(Railroad Co.* v. *Lockwood,* 17 Wall. 357, 21 L. Ed. 627; *Bank of Kentucky* v. *Adams Express Co.*, 93 U. S. 174, 23 L. Ed. 872).    Inside of that limitation, the carrier may modify his responsibility by special contract with a shipper. A bill of lading limiting liability constitutes such a contract, and knowledge of the contents by the shipper will be presumed." (See, also, section 2204 of the Civil Code.)

The second contention is likewise disposed of by the decision in the *Cau Case*.    It is said: "It is well settled that the carrier may limit his common-law liability.    *(York Co.* v. *Central R. R.*, 3 Wall. 107, 18 L. Ed. 170.)    But it is urged that the contract must be upon a consideration other than the mere transportation of the property, and an 'option and opportunity must be given to the shipper to select under which (the common-law or limited liability) he will ship his goods.'    If this means that a carrier must take no advantage of the shipper or practice no deceit upon him, we agree.    If it means that the alternative must be actually presented to the shipper by the carrier, we cannot agree.    From the standpoint of the law the relation between carrier and shipper is simple.    Primarily the carrier's responsibility is that expressed in the common law, and the shipper may insist upon the responsibility.    But he may consent to a limitation of it, and this is the 'option and opportunity' which is offered to him."

In our opinion, Mrs. Rose is not in any different position in this case from what she would have been had she gone to the agent of the Northern Pacific Railway Company in Butte and demanded from him a first-class limited ticket, and, as an in-

ducement to secure a reduced rate, had specifically agreed to hold the company for no greater amount than $100 in case her baggage should be lost.

Second. Is the contract void as against public policy? For the sake of this argument, it may be said that our Codes declare the public policy of this state. Sections 970 and 2240 of the Civil Code are relied upon by counsel for appellant in their contention that the contract is void so far as paragraph 8 is concerned. These sections read:

"Sec. 970. A check must be affixed to every package or parcel or baggage when taken for transportation by any agent or employee of such railroad corporation, and a duplicate thereof given to the passenger; * * * if his baggage is not delivered to him by the agent or employee of the railroad corporation, he may recover the value thereof from the corporation."

"Sec. 2240. That is not lawful which is: (1) Contrary to an express provision of law. (2) Contrary to the policy of express law, though not expressly prohibited. * * *"

But there are other sections of the same Code applicable here. Sections 2876 and 2878 read as follows:

"Sec. 2876. The obligations of a common carrier cannot be limited by general notice on his part, but may be limited by special contract."

"Sec. 2878. A passenger, consignor, or consignee, by accepting a ticket, bill of lading or written contract for carriage, with a knowledge of its terms, assents to the rate of hire, the time, place and manner of delivery therein stated. But his assent to any other modification of the carrier's rights or obligations contained in such instrument can only be manifested by his signature to the same."

Considering the provisions of sections 970, 2876, and 2878 together, there appears to be but one conclusion which can be reached, viz., that, in the absence of a special contract limiting the carrier's liability, the provisions of section 970 would authorize the recovery of the actual value of the baggage lost; but it is lawful, under section 2878, for the carrier and passenger

to agree, in a writing signed by the passenger, to a modification of the carrier's obligation to respond in damages for such actual value, and this seems to have been done in this instance.

In *Nelson* v. *Great Northern Ry. Co.*, 28 Mont. 297, 72 Pac. 642, this court considered to some extent the question presented here, with reference to the right of a common carrier of property to limit its common-law liability by a special contract, and, among other things, said: "At common law the carrier is liable for the full amount of the damage resulting from his negligence. This liability may be limited by an express agreement made between the shipper and the carrier at the time of the delivery of the goods for transportation, provided the limitation be such as the law can recognize as reasonable, and not inconsistent with sound public policy. (*Hart* v. *Pennsylvania R. R. Co.*, 112 U. S. 331, 5 Sup. Ct. 151, 28 L. Ed. 717; *Express Co.* v. *Caldwell*, 21 Wall. 264, 22 L. Ed. 556; *Squire et al.* v. *New York Cent. R. R. Co.*, 98 Mass. 244, 93 Am. Dec. 162.) And where the parties have, by stipulation, fixed upon a value of the property, such stipulation has the effect of limiting the liability of the carrier, and is, to that extent, a defense to an action for damages."

In *Hart* v. *Pennsylvania R. R. Co.*, 112 U. S. 331, 5 Sup. Ct. 151, 28 L. Ed. 717, the same subject is considered, and it is there said: "There is no justice in allowing the shipper to be paid a large value for an article which he has induced the carrier to take at a low rate of freight on the assertion and agreement that its value is a less sum than that claimed after a loss. It is just to hold the shipper to his agreement, fairly made, as to value, even where the loss or injury has occurred through the negligence of the carrier. The effect of the agreement is to cheapen the freight and secure the carriage, if there is no loss; and the effect of disregarding the agreement, after a loss, is to expose the carrier to a greater risk than the parties intended he should assume. The agreement as to value, in this case, stands as if the carrier had asked the value of the horses, and had been told by the plaintiff the sum inserted in the contract.

"The limitation as to value has no tendency to exempt from liability for negligence. It does not induce want of care. It exacts from the carrier the measure of care due to the value agreed on. The carrier is bound to respond in that value for negligence. The compensation for carriage is based on that value. *The shipper is estopped from saying that the value is greater. The articles have no greater value, for the purposes of the contract of transportation, between the parties to that contract.* The carrier must respond for negligence up to that value. It is just and reasonable that such a contract, fairly entered into, and where there is no deceit practiced on the shipper, should be upheld. There is no violation of public policy. On the contrary, it would be unjust and unreasonable, and would be repugnant to the soundest principles of fair dealing and of the freedom of contracting, and thus in conflict with public policy, if a shipper should be allowed to reap the benefit of the contract if there is no loss, and to repudiate it in case of loss." To the same effect is the decision in *Cau* v. *Texas etc. Ry. Co.*, above.

Section 2892 of the Civil Code provides: "The liability of a carrier for baggage received by him with a passenger is the same as that of a common carrier of property." Under the provisions of this section, the decisions cited above are directly applicable here.

While it may be admitted, for the purposes of this case, although not decided, that a carrier would not be permitted to contract against any liability whatever arising from its own negligence, that it may lawfully contract to limit such liability, provided the limitation is reasonable, can hardly be said to be open to doubt at this time, although there appears to be some conflict in the decisions. (6 Cyc. 399, 400.) From the record presented in this case, it is impossible for this court to say that the limitation imposed in this instance was unreasonable.

We find no error in the record. The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.